**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| _____ ) | |
| EDWARD WRIGHT, GLORIA WRIGHT, ) | |
| JENNIFER WRIGHT, and NICOLE ) | |
| WRIGHT, ) | |
| ) | **Civil Action No.** |
| Plaintiffs, ) | **07-40305-FDS** |
| ) | |
| v. ) | |
| ) | |
| TOWN OF SOUTHBRIDGE, ) | |
| SOUTHBRIDGE TOWN COUNCIL, ) | |
| SOUTHBRIDGE POLICE DEPARTMENT, ) | |
| SOUTHBRIDGE BOARD OF HEALTH, ) | |
| and DANIEL CHARETTE, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**MEMORANDUM AND ORDER ON**
**DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE**

**SAYLOR, J.**

This action is brought by a homeless family living in Southbridge, Massachusetts, who alleges that the Town and its chief of police deprived them of their constitutional rights. Plaintiffs are proceeding *pro se*.

Plaintiffs Edward and Gloria Wright and their daughters Jennifer and Nicole allege that the Town of Southbridge harassed them for displaying protest signs on their family van, in which they live, in an effort to force them to leave town. Plaintiffs also allege that Southbridge Chief of Police Daniel Charette and other officers used excessive force while executing a misdemeanor arrest warrant against members of the family. Plaintiffs assert claims for "excessive force and abuse of power," discrimination, defamation of character, personal injuries, and violation of their rights under the First Amendment.

Defendants the Town of Southbridge, the Southbridge Police Department, the

Southbridge Board of Health, and Police Chief Charette have moved to dismiss the complaint for

failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

Defendants have also moved to strike certain items in plaintiffs' opposition to the motion to

dismiss.  For the reasons stated below, the motions to dismiss will be granted as to the Police

Department and the Board of Health and as to certain of the claims.  The motion to strike will be

granted in part.

I.      **Factual Background**

        For the purposes of deciding this motion to dismiss, the Court accepts as true all well-

pleaded facts in the plaintiffs' complaint.[1]

        In 2006, plaintiffs Edward and Gloria Wright and their daughters, Jennifer and Nicole,

were homeless and living in a van on Elm Street in Southbridge.  According to the Wrights, their

home and business had been destroyed, although the details are not set forth in the complaint.  At

some point, the Wright family mounted a protest against the "injustice" of what they perceived to

be the Town's failure to conduct an adequate investigation of the circumstances of the

"destruction."  (Compl. ¶ 16).  Among other things, the Wrights used the van to display signs

complaining about their treatment by the Town.

        Southbridge has a town council form of government, with a town manager.  On March 28,

2006, the Southbridge Town Council convened a meeting at which the signs on the Wright family

van were discussed.  The following day, March 29, Southbridge Chief of Police Daniel Charette

---

[1] The complaint, which is handwritten, is sparse and often cryptic.  The Court is construing the complaint
in somewhat generous terms in light of the plaintiffs' *pro se* status.

and Town Manager Clayton Carlisle came to the van and asked the Wrights to remove their signs. The Wrights were told that if they complied with this request, they would be allowed to remain in Southbridge.  They refused to remove the signs.

At some unspecified point, the Town Council approved a new by-law, drafted by Charette, prohibiting overnight camping between the hours of 12:00 a.m. and 4:00 a.m. and authorizing the issuance of tickets to violators.  The Wrights allege that the by-law was written specifically to target them in retaliation for their refusal to take down the signs.

The Wrights also allege that the Southbridge Board of Health assisted in the effort to run them out of town.  It is not clear from the complaint, but it appears that the Wrights were cited for health code violations relating to their occupancy of the van.

Between March 31 and April 27, 2006, with Town Council approval, Charette ordered his police officers to begin ticketing the van for two-hour parking violations.  According to the Wrights, they were the "only ones" to receive such tickets.  (Compl. ¶ 17).

On April 28, 2006, Charette asked the Wrights to move on to another town.  That same day, Charette and other officers, including its tactical team, approached the Wright van to enforce an arrest warrant for "inadequate bedroom space in a van."  (Compl. ¶ 18).[2]  After blocking off the street from both ends, the police allegedly shot a canister of tear gas through one of the van's windows.  The police then smashed five of the van's windows and sprayed the family with mace. Various family members were injured; one needed to be evacuated by ambulance.  The police ultimately removed the Wrights from the van at gunpoint.  According to the Wrights, they did not

---

[2] The complaint alleges that the "tackled team" was present.  (Compl. ¶ 18).  The Court assumes plaintiffs were referring to a police tactical unit.

resist.

## II.     Procedural Background

The handwritten complaint, filed November 30, 2007, named as defendants the Town of Southbridge, the Southbridge Town Council, the Southbridge Police Department, the Southbridge Board of Health, Chief of Police Daniel Charette, Southbridge police officers Duane Le Doux, John Mulcahy, and Richard Reddick, and Southbridge Board of Health Inspectors Nick Tortis and James Philbrook.  Pursuant to its screening authority under 28 U.S.C. § 1915(e)(2), the Court issued a Memorandum and Order dated March 12, 2008, instructing  plaintiffs to file an amended complaint within 35 days clearly stating the alleged misconduct of Le Doux, Mulcahy, Reddick, Tortis, and Philbrook, and the specific claims against them, and directing that those claims would be dismissed if such a filing were not made.  Plaintiffs did not file such an amended complaint, and on April 23, 2008, the Court dismissed the claims against those defendants.

On May 29, 2008, the remaining defendants collectively moved to dismiss for failure to state a claim.  On June 5, 2008, plaintiffs filed an opposition to the motion.  On June 10, 2008, defendants moved to strike plaintiffs' opposition paper on the grounds that it included inadmissible materials in the attachment that are not appropriate for consideration on a motion to dismiss.

## III.    Standard of Review

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must assume the truth of all well-pleaded facts and give the plaintiff the benefit of all reasonable inferences from those facts.  *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)).  *Pro se* complaints are accorded

"an extra degree of solicitude." *Adams v. Stephenson*, 1997 U.S. App. LEXIS 15371, at *2 (1st Cir. June 23, 1997) (quoting *Rodi v. Ventetuolo*, 941 F.2d 22, 23 (1st Cir. 1991)).  However, even a *pro se* plaintiff is required "to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Adams*, 1997 U.S. App. LEXIS 15371, at *2 (quoting *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988)).  Dismissal of a *pro se* complaint is appropriate when a "lenient construction," *Rockwell v. Cape Cod Hosp.*, 26 F.3d 254, 260 (1st Cir. 1994), demonstrates beyond doubt that plaintiffs' well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief," *Ruiz Rivera v. Pfizer Pharms., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (internal quotations, citations and original textual alterations omitted).  The fact that the Court is required to interpret the complaint with relative leniency does not, of course, mean that plaintiffs' claims are necessarily meritorious.

## IV.  <u>Analysis</u>

### A.  <u>Subject Matter Jurisdiction</u>

Plaintiffs assert jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332.[3] Plainly there is no diversity jurisdiction, as all parties are citizens of Massachusetts.  Nevertheless, construing the complaint to include causes of action under 42 U.S.C. § 1983, there appears to be federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction over the state law defamation claim under 28 U.S.C. § 1367(a).

### B.  <u>Parties Amenable to Suit</u>

---

[3] Defendants have not contested subject matter jurisdiction.  Nonetheless, even when the parties fail to raise the issue themselves, the court has a duty to inquire into the matter *sua sponte* and satisfy itself of its jurisdiction before proceeding.  *See, e.g.*, *Fafel v. DiPaola*, 399 F.3d 403, 410 (1st Cir. 2005).

The complaint names various subsidiary entities of the Town as defendants, including the Southbridge Town Council, the Southbridge Police Department, and the Southbridge Board of Health.  Under Fed. R. Civ. P. 17(b)(3), the capacity of a party to be sued is determined "by the law of the state where the court is located."  Under Massachusetts law, a town "is not and cannot be deemed an entity 'separate and independent' from any of its constituent departments," and a suit against a department is deemed to be a suit against the Town itself.  *Murphy v. Town of Natick*, 516 F. Supp. 2d 153, 158-59 (D. Mass. 2007) (citing cases).  Accordingly, the claims against the Southbridge Police Department, the Southbridge Town Council, and the Southbridge Board of Health will be dismissed.

### C.   The Nature of Plaintiffs' Claims

The Court turns next to the specific claims of the complaint, to the extent they can be gleaned from its somewhat inscrutable text.  Paragraph 19 of the complaint alleges as follows: "We are asking relief for the reasons listed here (A) pain and suffering, (B) Defamation of Character, (C) Civil Rights Violation - 1st Amendment, (D) Discrimination, (E) Excessive force and abuse of power, and (F) personnal [sic] injuries."

Plaintiffs appear to intermingle their alleged injuries with their theories of recovery.  The Court will endeavor to marshal the allegations into recognized causes of action.  The first and last prayers for relief allege damages that plaintiffs suffered, but not the reasons why they would be entitled to relief for those damages—that is, the reasons that the causes of those damages are cognizable as legal wrongs.  It appears likely from the facts alleged in the complaint that plaintiffs' pain and suffering and their personal injuries all resulted from the alleged excessive use of force, as it is unlikely that the alleged defamation, discrimination, or First Amendment violation led to

actual physical injuries.

It also appears that the excessive force and First Amendment claims are really claims for civil rights violations under 42 U.S.C. § 1983.[4]  The discrimination claim is difficult to characterize, as plaintiffs did not specify a statutory basis under either state or federal law.  It appears likely, however, that plaintiffs are alleging selective treatment in violation of their right to equal protection of the laws, bringing this claim, too, within the ambit of § 1983.

Accordingly, the Court will analyze the sufficiency of the allegations on the following two claims:  (1) deprivation of civil rights under 42 U.S.C. § 1983 on three separate theories, and (2) defamation.

### D.    Deprivation of Rights under 42 U.S.C. § 1983

A plaintiff in a § 1983 action must establish two elements in order to recover:  first, that the defendant has deprived him or her of a right secured by the Constitution, and second, that the defendant did so acting under color of state law.  *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 150 (1970); *see also Gonzalez-Morales v. Hernandez-Arencibia*, 221 F.3d 45, 49 (1st Cir. 2000).  Plaintiffs have adequately alleged facts establishing that the defendants acted under color of state

---

[4] Plaintiffs have styled their claim as one for "excessive force and abuse of power," without specifying the actual legal theory on which they are proceeding.  (Compl. ¶¶ 18, 19).  The Court has concluded that this claim arises under the Fourth Amendment's prohibition on the use of excessive force.  However, a claim of abuse of power also implicates substantive due process concerns.  *See Pagan v. Calderon*, 448 F.3d 16, 36 (1st Cir. 2006) (discussing a claim for gross abuse of power and explaining that "[w]e have equated this concept with the 'shocks the conscience' concept used in substantive due process cases").  Although the conduct that plaintiffs contend constitutes excessive force could also be said to "shock the conscience," the substantive due process and Fourth Amendment claims would thereby overlap completely.  Because substantive due process has become disfavored "as a theory for constitutional redress," the First Circuit has previously declined to "enter the uncharted thicket of substantive due process to find an avenue for relief" where, as here, a substantive due process claim is "coextensive" with a claim under a specific constitutional provision.  *Nestor Colon Medina & Sucesores, Inc. v. Custodio*, 964 F.2d 32, 45, 46 (1st Cir. 1992) (substantive due process claim coextensive with First Amendment claim).  Accordingly, the claim for "excessive force and abuse of power" will be treated as one for excessive force in violation of the Fourth Amendment.

law.  "Generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law."  *West v. Atkins*, 487 U.S. 42, 50 (1988).  As alleged in the complaint, Chief Charette and other town officials were acting in their official capacities pursuant to state law in all of their dealings with the Wrights.[5]  The question then becomes whether the plaintiffs have adequately alleged violations of rights secured by the Constitution.

### 1.    Interference with Free Speech—First Amendment

Plaintiffs' claim under the First Amendment is premised upon the demands to remove the signs from the van.  According to plaintiffs, their van was parked on Elm Street in the Town of Southbridge.  The Court will infer, under the circumstances, that it was a public street.  Governmental power to circumscribe freedom of speech in public streets is substantially limited.

> [W]e have repeatedly referred to public streets as the archetype of a traditional public forum. . . .  In these quintessential public fora, the government may not prohibit all communicative activity.  For the State to enforce a content-based exclusion it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end.  The State may also enforce regulations of the time, place, and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.

*Frisby v. Schultz*, 487 U.S. 474, 480-81 (1988) (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983) (textual alteration in original omitted)).

Plaintiffs allege that they had posted signs on their van as part of a protest against the injustices the Town had inflicted upon them.  They further allege that the Chief of Police and the

---

[5] Charette has raised a defense of qualified immunity as to all of the counts.  However, "[i]n evaluating a claim of qualified immunity, . . . [the court] must evaluate whether there was a constitutional violation before [it addresses] the other elements of a qualified immunity defense."  *Bellville v. Town of Northboro*, 375 F.3d 25, 30 (1st Cir. 2004).

Town Manager, acting with the approval of the Town Council, asked them to remove the signs from the van and told them they would be allowed to remain in Southbridge only if they complied. It is a reasonable inference from these allegations that the Town's desire to have the signs taken down was motivated at least in part by the signs' content, and that the demand to remove the signs did not serve a compelling governmental interest and was not narrowly tailored to that end. Of course, the evidence may prove otherwise; but at this stage of the proceedings, the mere allegation is sufficient.

The complaint's allegations also create an inference of retaliation for protected speech. The complaint alleges that various town officials sought to drive the Wrights out of town in response to their protest activities. Furthermore, according to the complaint, the allegedly discriminatory ticketing of the van for two-hour parking violations was commenced on March 31, 2006, just two days after the family refused Charette's request to take down the signs.[6]

Defendants contend that the Wrights have failed to allege a First Amendment violation because they have not alleged that their speech was chilled or intimidated by defendants' conduct. *See Sullivan v. Carrick*, 888 F.2d 1, 4 (1st Cir. 1989) ("To show a First Amendment violation in this context Sullivan must allege that his speech was in fact chilled or intimidated . . . .  Absent such an allegation, no violation occurred.").  Defendants appear to be arguing, in substance, that plaintiffs suffered no injury.

---

[6] Of course, not all forms of protest must be allowed, and the Town might have had legitimate reasons for seeking the removal of the signs.  It is well-established that "reasonable 'time, place and manner' regulations of picketing may be necessary to further significant governmental interests." *Mosley*, 408 U.S. at 98 (citing cases). "Communicative conduct is subject to regulation as to 'time, place and manner' in the furtherance of a substantial governmental interest, so long as the restrictions imposed are only so broad as required in order to further the interest and are unrelated to the content and subject matter of the message communicated." *Gay Students Org. of Univ. of N.H. v. Bonner*, 509 F.2d 652, 660 (1st Cir. 1974) (citing *Mosley*; *United States v. O'Brien*, 391 U.S. at 376-77).

It is true that, according to the Wrights, they refused to take down the signs, and therefore arguably were not chilled or intimidated.  But injury in the context of a First Amendment claim is not so narrowly defined.  Among other things, such a claim may derive from "the injury caused by the threat that the speaker will be prosecuted or otherwise punished for his or her speech. . . .  It is the possibility of a punishment as the price of one's speech, whether or not the threat of being sanctioned is realized, that causes harm to the speaker."  *Parow v. Kinnon*, 300 F. Supp. 2d 256, 261-62 (D. Mass. 2004) (citing *Mangual v. Rotger-Sabat*, 317 F.3d 45, 56-57 (1st Cir. 2003); *New Hampshire Right to Life Political Action Comm. v. Gardner*, 99 F.3d 8, 13 (1st Cir. 1996)).  Given the ultimatum allegedly presented to the Wright family—effectively take down the signs or leave town—plaintiffs have alleged cognizable injuries.

Dismissal of a complaint on a 12(b)(6) motion "is a dubious practice in a close[] case, particularly one involving a First Amendment claim.  Summary judgment allows a broader basis for decision, and a hearing of evidence an even broader basis."  *Dewey v. University of N. H.*, 694 F.2d 1, 3 (1st Cir. 1982)  Especially when viewed with the "extra degree of solicitude" afforded *pro se* complainants, the Court is persuaded that the complaint is sufficient to survive dismissal as to the First Amendment claim.

## 2.   <u>Excessive Force—Fourth Amendment</u>

"To establish a Fourth Amendment violation based on excessive force, a plaintiff must show that the defendant officer employed force that was unreasonable under the circumstances."  *Jennings v. Jones*, 499 F.3d 2, 11 (1st Cir. 2007) (citing *Graham v. Connor*, 490 U.S. 386, 397 (1989)).  The reasonableness of the force used

must be judged from the perspective of a reasonable officer on the scene, rather

> than with the 20/20 vision of hindsight. . . .  There must be careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Jennings*, F.3d at 11 (quoting *Graham*, 490 U.S. at 396-97) (internal quotations omitted and original textual alteration omitted).  The standard for determining whether police officers used excessive force is "comparatively generous" to law enforcement officers "where potential danger, emergency conditions or other exigent circumstances are present" and "the 'calculus of reasonableness' must make 'allowance' for the need of police officers 'to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'"  *Roy v. Inhabitants of Lewiston*, 42 F.3d 691, 695 (1st Cir. 1994) (quoting *Graham*, 490 U.S. at 396-97).

According to the complaint, the police came to execute a misdemeanor warrant for "inadequate bedroom space in a van."  (Compl. ¶ 18).  The Wrights did not resist; nonetheless, the police employed overwhelming force.  According to the complaint, Chief Charette and "half the police department," including its tactical unit, were involved in raiding the van; the police shot a tear gas cannister through one of the van's windows and smashed five others; the family was sprayed with mace; and, ultimately, the family was removed from the van at gunpoint.

At this stage of the proceeding, the Court must assume that those allegations are true.  Under the circumstances, it is clear that the complaint states a claim for excessive force in violation of the Fourth Amendment.

### 3.     Denial of Equal Protection—Fourteenth Amendment

As noted, the "discrimination" claim is more accurately characterized as a claim for

selective treatment in violation of the Equal Protection Clause of the Fourteenth Amendment.

Liability in a selective treatment case requires proof

> that (1) the person, compared with others similarly situated, was selectively
> treated; and (2) that such selective treatment was based on impermissible
> considerations such as race, religion, intent to inhibit or punish the exercise of
> constitutional rights, or malicious or bad faith intent to injure a person.

*Rubinovitz v. Rogato*, 60 F.3d 906, 909-10 (1st Cir. 1995) (quoting *Yerardi's Moody St.*

*Restaurant & Lounge, Inc. v. Board of Selectmen*, 878 F.2d 16, 21 (1st Cir. 1989)).

Plaintiffs must allege that similarly-situated persons were treated differently in order to

carry their "modest burden" under Rule 12(b)(6). *Pagan v. Calderon*, 448 F.3d 16, 35 (1st Cir.

2006). Plaintiffs' allegations here—"We were the only ones to received [*sic*] these [2-hour

parking] tickets" and the overnight camping by-law "was enforced only against us"—are

threadbare at best. (Compl. ¶ 17). Nonetheless, they are sufficient, in this context, to state a

claim of selective treatment.[7] Plaintiffs must further allege that the selective treatment was based

on impermissible considerations, such as an intent to inhibit or punish the exercise of

constitutional rights. For the reasons stated above, the complaint alleges, albeit in minimal

fashion, that the selective enforcement was intended to punish plaintiffs for their protest activities

(that is, the exercise of their First Amendment rights).[8]

---

[7] This is not a case where "applicable state law vests the decisionmaker with discretionary authority to award or withhold a state benefit," in which case a plaintiff seeking to assert an equal protection claim faces a "steep uphill climb." *Pagan*, 448 F.3d at 34. The "high hurdle" that such claims must overcome "makes eminently good sense" in that it prevents plaintiffs from "manufactur[ing] a constitutional claim by the simple expedient of alleging differential treatment. Were that the rule, the correctness of every state or local benefit denial would become a federal case." *Id.* at 35.

[8] In that respect, the equal protection claim is essentially the same as the claim for retaliation for exercising First Amendment rights. Because plaintiffs already seek to vindicate their First Amendment rights with a separate, and more directly targeted, claim, it may prove unnecessary to assert a separate equal protection claim. *See Nestor Colon*, 964 F.2d at 45 (finding "little basis or justification for applying equal protection analysis" where

Accordingly, the complaint states a claim on which relief can be granted with respect to the equal protection claim.

### E.   Qualified Immunity

Police Chief Charette may be entitled to qualified immunity on the § 1983 claims.  There is a "a three-step algorithm for the determination of whether a state actor is entitled to qualified immunity":

> In sequential order, we consider (i) whether the plaintiff's allegations, if true, establish a constitutional violation; (ii) whether the constitutional right at issue was clearly established at the time of the putative violation; and (iii) whether a reasonable officer, situated similarly to the defendant, would have understood the challenged act or omission to contravene the discerned constitutional right.  Thus, a court called upon to review a denied Rule 12 (b)(6) motion premised on qualified immunity ordinarily should consider, as a first step, whether the facts set forth in the complaint, taken in the light most congenial to the complaining party, adequately allege that the defendant violated a federally-secured right.

*Pagan*, 448 F.3d at 31 (citing *Saucier v. Katz*, 533 U.S. 194, 200-02 (2001)) (additional citation, quotations and original textual alterations omitted).

Here, the first element (allegation of a constitutional violation) has been satisfied.  The second element appears to have been met, as well; the right to protest on a public street without undue governmental interference or retaliation, the right to be free from excessive force, and the right to be free from selective enforcement in retaliation for the exercise of constitutional rights are all clearly established.

The Court is not, however, prepared at this stage to conclude that the third element—"whether a reasonable officer, situated similarly to the defendant, would have

---

the First Amendment already protects individuals against unconstitutional discrimination and retaliation).  In the absence of a factual record, however, the Court will not assume the equal protection claim is necessarily redundant.

understood the challenged act or omission to contravene the discerned constitutional right"—has been satisfied.[9]  It may well be, for example, that no reasonable police officer would have understood that conditioning liberty to remain in a town on an agreement to refrain from protesting against the town government is consistent with the Constitution.  On the present record, however—which consists entirely of a sketchy *pro se* complaint—the Court is not prepared to make that conclusion.  Once the parties have had an opportunity to conduct discovery, and develop a factual record, the Court will revisit the issue as appropriate.

### F.   Municipal Liability

A local government may not be sued under § 1983 under a theory of vicarious liability for an injury inflicted by its employees or agents.  *Monell v. Department of Soc. Servs.*, 436 U.S. 658 (1978).   However, a local government may be liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."  *Id.*, 436 U.S. at 694.

The complaint here alleges that the Southbridge Town Council adopted a by-law targeted against the plaintiffs in retaliation for their refusal to remove the protest signs from the van.   The Town Council is composed of duly elected lawmakers, whose acts can be fairly said to represent the official policy of the Town.  Accordingly, the complaint is sufficient to establish the "direct causal link between a municipal policy or custom and the alleged constitutional deprivation" required in § 1983 actions, at least as to the First Amendment claim.  *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989).  Although it is far from clear, it also appears that the equal

---

[9] This is an objective test.  Charette "is entitled to immunity so long as he reasonably could have believed on the facts before him that no violation existed."  *Philip v. Cronin*, 537 F.3d 26, 34 (1st Cir. 2008).

14

protection claim is premised on a similar set of facts.   The motion of the Town of Southbridge to dismiss the First Amendment and Equal Protection claims will therefore be denied.

The Town, however, is shielded from liability on the Fourth Amendment claim by *Monell*. Nowhere in their complaint do plaintiffs allege facts giving rise to even an inference of a municipal "policy or custom" on the use of excessive force.  *See Monell*, 436 U.S. at 694.  Accordingly, the motion of the Town to dismiss the excessive force claim will be granted.

### G.   The Defamation Claim

The basis of plaintiffs' "defamation of character" claim is entirely unclear.   It is impossible to tell from the complaint who was defamed, what statement was alleged to be defamatory, or against whom specifically the claim is asserted.  Even giving the complaint the benefit of substantial solicitude, this is a fatal defect.  Under Massachusetts law, "To prevail on a claim of defamation, a plaintiff must establish that the defendant was at fault for the publication of a false statement regarding the plaintiff, capable of damaging the plaintiff's reputation in the community, which either caused economic loss or is actionable without proof of economic loss."  *White v. Blue Cross & Blue Shield of Mass.*, 442 Mass. 64, 66 (2004).  Both as to Chief Charette and the Town, plaintiffs have completely failed to allege facts supporting any of the required elements of a defamation claim—specifically, publication, a false and defamatory statement, and injury (or some fact bringing them within the exception to the injury requirement).[10]  The defamation claim will

---

[10] In addition, Mass. Gen. Laws Ch. 258, § 10(c)—the state statutory provision authorizing suits against a municipality for the actions of public employees—does not apply to "any claim arising out of an intentional tort, including . . . libel [and] slander."  Libel and slander are the two forms of defamation.  *See Draghetti v. Chmielewski*, 416 Mass. 808, 813 (1994) ("Defamation encompasses the torts of libel and slander—the one being in general written while the other in general is oral.").  Thus, the defamation claim against the Town would be barred under Massachusetts law even if plaintiffs had pleaded adequate facts in the complaint.

accordingly be dismissed.

       **H.**      **Defendants' Motion to Strike**

       Defendants have moved to strike plaintiffs' filing in opposition to the motion to dismiss.

Defendants do not cite any law as the basis for their motion, contending only that the opposition

filing is "replete with inadmissible and/or unsupported allegations and attachments which cannot

be considered in opposition to the defendants' motion."  Plaintiffs did indeed attach "furture [sic]

exhibits to be filed" to their motion asking the Court to deny the motion to dismiss, including

newspaper articles, copies of photographs, letters of reference for plaintiff Edward Wright,

medical records, and a state court preliminary injunction order.  These attached materials concern

matters outside of the pleadings and will be struck.[11]

**V.**      **Conclusion**

       For the foregoing reasons,

       1.       Defendants' Motion to Dismiss is

            a.      GRANTED as to the Southbridge Police Department, the Southbridge

                  Town Council, and the Southbridge Board of Health as to all claims;

            b.      GRANTED as to the Town of Southbridge as to the claim of excessive

                  force;

            c.      GRANTED as to all defendants as to the claim of defamation; and

            d.      otherwise DENIED.

       2.       The Motion to Strike is GRANTED as to the materials attached by plaintiffs to

---

[11] Conversion of this motion to one for summary judgment under Rule 12(d) was not warranted by the nature of the materials submitted by plaintiff, which at a minimum were submitted in inadmissible form.  The Court makes no ruling as to whether the submitted materials would be admissible at the trial.

their opposition to the Motion to Dismiss, and otherwise DENIED.

**So Ordered.**


                                                     /s/ F. Dennis Saylor
                                                    F. Dennis Saylor IV
Dated: January 15, 2009                             United States District Judge